## In re DEBT LIMIT OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 24, 1910.)

1. MUNICIPAL CORPORATIONS (§ 865*)—MUNICIPAL INDEBTEDNESS—LIMITATION OF AMOUNT.

Under Const. art. 8, § 10, as amended January 1, 1910, and Laws 1910, c. 276, limiting municipal indebtedness, and providing that any indebtedness incurred by the city of New York for any rapid transit or dock investment may be excluded proportionately to the extent to which the current net revenue received by the city therefrom shall meet the interest and amortization installments thereof, bonds issued by the city of New York for the construction of a rapid transit railroad or for the purchase or construction of docks need not be included in ascertaining the debt limit, where the current net revenue received by the city from the railroad or docks will pay the interest, and provide for the principal at maturity; the Constitution excluding only such bonds as the revenue from the improvement for which they are issued shall pay both the interest accruing and the principal when payable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1837; Dec. Dig. § 865.*]

2. MUNICIPAL CORPORATIONS (§ 865*)—MUNICIPAL INDEBTEDNESS—LIMITATION OF AMOUNT—COMPUTATION.

The city of New York prior to January 1, 1910, issued bonds aggregating $46,452,222.38, payable between the years 1948 and 1956, to pay the indebtedness incurred under a contract for the construction of a rapid transit railroad. The railroad was operated by a lessee who had contracted to pay to the city $2,001,472.91 annually. The annual interest on the bonds amounted to $1,628,318.36, and the amount required each year to provide for the payment of the bonds at maturity was $490,141.14.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*Held*, that the city, under Const. art. 8, § 10, as amended January 1, 1910, and Laws 1910, c. 276, limiting municipal indebtedness, was entitled to have excluded from the debt limit the bonds which would be provided for by the sum annually paid by the lessee for the payment of interest, and for an amount sufficient to pay the principal of the bonds at maturity, so that no obligation would fall on the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1837; Dec. Dig. § 865.*]

Application by the City of New York for a determination of the amount of indebtedness incurred by the city for a specified purpose which may be excluded in determining the power of the city to become otherwise indebted. Judgment advised.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, CLARKE, and MILLER, JJ.

Archibald R. Watson, Corp. Counsel, for the application.

INGRAHAM, P. J. By section 10 of article 8 of the Constitution as it existed prior to January 1, 1910, it was provided:

"No county or city shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation, as it appeared by the assessment rolls of said county or city on the last assessment for state or county taxes prior to the incurring of such indebtedness; and all indebtedness in excess of such limitation, except such as may now exist, shall be absolutely void, except as herein otherwise provided."

By an amendment to the Constitution which took effect on the 1st of January, 1910, it was provided as an exception to this prohibition that:

"Any indebtedness heretofore incurred by the city of New York for any rapid transit or dock investment may be so excluded proportionately to the extent to which the current net revenue received by said city therefrom shall meet the interest and amortization installments thereof, provided that any increase in the debt incurring power of the city of New York which shall result from the exclusion of debts heretofore incurred shall be available only for the acquisition or construction of properties to be used for rapid transit or dock purposes. The Legislature shall prescribe the method by which and the terms and conditions under which the amount of any debt to be so excluded shall be determined, and no such debt shall be excluded except in accordance with the determination so prescribed. The Legislature may in its discretion confer appropriate jurisdiction on the Appellate Division of the Supreme Court in the first judicial department for the purpose of determining the amount of any debt to be so excluded."

In pursuance of this provision of the Constitution, the Legislature passed chapter 276 of the Laws of 1910 to prescribe the methods by which and the terms and conditions under which the amount of any debt incurred by the city of New York for rapid transit or dock investment prior to the 1st day of January, 1910, may be excluded in ascertaining the power of the city of New York to become otherwise indebted pursuant to this provision of the Constitution. Section 1 of that act provides that, whenever so required by the board of estimate and apportionment of that city, the comptroller shall prepare and sub-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mit to the said board a statement showing in detail the indebtedness incurred by the city of New York for any rapid transit or dock investment prior to the 1st day of January, 1910, with the dates of maturity of such indebtedness; the terms of any and all agreements and contracts made by or on behalf of the city with respect to such investments; the gross revenue received therefrom; and other details in relation thereto in relation to the interest paid, the annual installments necessary for the amortization thereof, and the current net revenue derived from said investment "to enable said board to ascertain the proportion of the interest and amortization installments of such indebtedness which the current net revenue received by the city from such investment is sufficient to meet."

Section 2 provides that the city of New York acting by said board may present to the Appellate Division of the Supreme Court in the First Judicial Department a verified petition setting forth the facts and praying for a determination of the amount of any such debt which may be excluded in ascertaining the power of the city to become otherwise indebted under the provisions of section 10 of article 8 of the Constitution; that in all proceedings under this act the petition or answer of the city shall be presumptive evidence of the material facts stated therein.

Provision is then made for publication of a notice of the presentation of this petition with a right to any party in interest including taxpayers and holders of bonds or corporate stock of the city of New York to file a verified answer to the petition, with a provision for disposing of any material issue of fact raised by such an answer. Section 7 provides that, after hearing the allegations and proofs of the parties, the Appellate Division shall with all convenient speed make its decision stating separately the facts found and the conclusions of law; and, upon making the decision, the Appellate Division shall make a final order determining the amount of indebtedness incurred prior to January 1, 1910, which may be excluded in determining the power of the city to become otherwise indebted under this provision of the Constitution. Section 8 provides that upon the making of an order by said court determining the amount of any indebtedness incurred by said city for a rapid transit or dock investment prior to the 1st day of January, 1910, which shall be excluded in ascertaining the power of the city to become otherwise indebted, such indebtedness shall be wholly excluded in ascertaining the power of the city to become otherwise indebted.

In pursuance of this act, there was presented to this court the petition of the city of New York, due notice of the presentation of which was given according to the statute, asking that the amount of the indebtedness incurred by the city of New York prior to the 1st day of January, 1910, for the Manhattan & The Bronx Rapid Transit Railroad may be excluded in ascertaining the power of the city to become otherwise indebted under the provisions of section 10 of article 8 of the Constitution as amended as aforesaid. From that petition it appears that the Manhattan & The Bronx Rapid Transit Railroad was constructed pursuant to a contract made under date of February 21, 1900, between the city of New York acting by the Board of Rapid

Transit Railroad Commissioners and John B. McDonald and by various supplemental, amendatory and modifying contracts at the expense of the city of New York; that the said railroad is now being operated by the Interborough Rapid Transit Company to which was assigned with the consent of the Board of Rapid Transit Commissioners so much of the said contracts as provided for the maintenance and operation of the said Rapid Transit Railroad, including the equipment thereof; that the city of New York, prior to January 1, 1910, issued its bonds to pay the indebtedness incurred under such contract amounting in the aggregate to $46,452,222.38. These bonds are payable between the years 1948 and 1956, the interest payable thereon varying from 3 to 4½ per cent. The net revenue which the city of New York is now receiving from the said Interborough Rapid Transit Company under the contract is the sum of $2,001,472.91. The annual interest payable on the bonds issued to pay the indebtedness incurred for this road amounts to $1,628,318.36 and the amount required to be paid each year to provide for the payment of these bonds at maturity is $490,141.14, making a total of $2,118,459.52. There is thus a deficiency in the current net revenue received by said city to meet the interest and amortization installments of the said bonds of $116,986.61 per year. It is also alleged that, under the contracts, work was to be done and materials furnished which imposed a liability upon the city of $1,804,419.62 which was not payable prior to January 1, 1910, and various contracts under which this amount is payable are specified in the petition. It is also alleged that certain proceedings are pending for the acquisition of easements in certain avenues in the borough of The Bronx for the use of this railroad, the easements having been acquired by the city of the 23d of October, 1907, and the maximum amount to be awarded in those proceedings for the acquisition of these easements is stated to be $2,000,000. Neither of these sums have as yet been paid, no bonds have been issued to provide the means of payment, and no interest is being paid thereon, although it is probable that the city of New York will have to pay the interest on whatever sum is awarded for the easements taken as they vested in the city of New York in October, 1907.

By the original contract, a synopsis of which is annexed to the petition and full copies submitted to the court upon this application, the lessee agreed to pay to the city as rental for the railroad an annual sum equal to the annual interest payable by the city on all bonds which were issued by it in order to provide means for the construction. This annual interest was to be increased from time to time by the amount of the annual interest payable by the city for all bonds which after the date when the railroad should be declared to be ready for operation should be issued in order to provide means for construction. But the contractor was not required to pay interest on bonds to pay the rights, terms, easements, privileges, or property other than lands acquired in fee. The lessee was also required to pay a further annual sum equal to one per centum upon the whole amount of the said bonds, except that the annual payments in excess of such interest shall for each year during a period of five years from the date when the payments of ren-

tal shall begin be such sum not exceeding such one per centum as shall be equal to the excess of the profits of the contractor or lessee for each year in the operation of the railroad over 5 per cent. upon the capital of the contractor or lessee invested in the enterprise, and except, further, that for each year during a second and immediately succeeding period of five years as shall in lieu of such one per centum be paid one-half of such one per centum, and, in addition, an amount not exceeding one-half of such one per centum which shall be equal to the excess of profits of the contractor for such year in the operation of the railroad over 5 per cent. per annum upon its capital invested as aforesaid. It would appear, however, from the petition that the lessee has paid to the city one per centum of the bonds issued in the construction of this railroad, and I suppose this amount will be increased from time to time as the additional bonds amounting to $1,804,419.62 are issued by the city to pay for the contract obligations for work to be done and materials to be furnished under various contracts for the building of this road.

The Constitution provides that:

"Any indebtedness * * * may be so excluded proportionately to the extent to which the current net revenue received by said city therefrom shall meet the interest and amortization installments thereof."

And this court is directed to make an order determining the amount of indebtedness which may be excluded in determining the power of the city to become otherwise indebted under this provision of the Constitution.

What is quite evidently intended by this provision is that bonds that have been issued for the construction of a rapid transit railroad or for the purchase or construction of docks are not to be included in ascertaining the debt limit if the current net revenue received by the city from the railroad or the docks will pay the interest that has to be paid by the city and will also provide for the payment of the principal when due; it being clearly the intention to exclude only such bonds as the revenue from the improvement for which they were issued shall pay both the interest accruing and the principal when payable. Applying this provision, all of the bonds issued to construct this improvement cannot be thus excluded. The petition states that the annual installments necessary for the amortization of such bonds is $490,141.14 per year, while the one per centum upon the bonds issued by the city under the terms of these contracts which is received by the city is $443,937.-55. There is also a difference between the rental received on account of the interest paid on the bonds and the actual interest paid by the city of $70,783.02 annually. As it would appear under the contract that the lessee was bound to pay to the city an annual sum equal to the annual interest payable by the city upon all bonds which shall be issued by it in order to provide moneys for the construction, it may be that some of these bonds were issued to pay for easements, privileges, or property other than lands acquired in fee.

The situation presented is that, under these contracts, the city receives from the lessee of this road $2,001,472.91. I cannot see that, under this contract, the rental can be less than that sum, unless it

should appear that the total net profits of the road are substantially less than they are at present, which is opposed to all of the experience in relation to railroads of this character in the city of New York. I think, therefore, the court is entitled to assume that this amount will be the minimum amount received in the future. Under the provision of the Constitution, the petitioner is entitled to have the bonds that have been issued to construct this road excluded from the debt limit which this sum of $2,001,472.91 payable yearly will be sufficient to pay the interest, and also provide an amount which received and invested each year will, when the bonds become due, be sufficient to pay the principal. It seems to me the proper method is to ascertain the number and issue of bonds issued for this improvement which will be thus provided for and specifically exclude such bonds. As these bonds have been issued from year to year, the order could specifically identify the· bonds to be excluded by the years in which they were issued. We are dealing on this application solely in relation to bonds issued prior to January 1, 1910. No question is presented as to any other contract indebtedness payable in the future. I do not understand that such contract indebtedness is to be excluded from the city's indebtedness. We have on this application a certain amount of bonds issued for the construction of a rapid transit railroad. The city under this provision of the Constitution is asking that this court fix the proportionate amount of such bonds as are to be excluded, and that proportionate amount of bonds it seems to me is the proportion of the bonds issued which the current net revenue received by the city .will suffice to pay the principal and interest thereon at maturity, so that for such bonds no obligation will eventually fall upon the city of New York. To arrive at this amount will require some calculation which should be furnished by experts and which the city can supply in the shape of proper affidavits. The proposal that the annual payments shall be capitalized on a 3 per cent. basis would seem to be reasonable and such a percentage may be adopted.

The petitioner may submit the necessary proof and proposed decision. All concur.